OPINION OF THE COURT
Thomas W. Keegan, J.
 This is a motion by the People for an order, pursuant to CPL 240.40, directing the defendant herein to submit to the surgical removal of bullet fragments from his left shoulder and to the taking of a blood sample for comparison purposes with blood found at the scene of the crime. For the reasons stated herein, the People’s motion is granted in part and denied in part.
The defendant stands charged with murder, and other crimes, relating to the shooting death of a security guard at the Port of Albany, New York, by means of the guard’s own gun. The defendant was arrested some time later, while in possession of the alleged murder weapon. At the time of arrest, the defendant exhibited what appeared to be a bullet entrance wound to the anterior aspect of the left shoulder. Later examination by X ray has shown several small fragments and two larger fragments of what is believed to be the remains of a bullet.
At the evidentiary hearing conducted in this court on August 23, 1989, to determine whether the People’s motion for removal of the bullet fragments should be granted, only one witness was called by the People. The defendant produced no witnesses.
After due consideration of the testimony of the People’s witness, Dr. John B. Fortune, both on direct and cross-examination, the court makes the following findings of fact:
An incision of 3 to 4 inches in length and 2 inches in depth will be necessary to remove the bullet fragments. In removing the bullet fragments, tissue, blood vessels and muscle would be cut. There is a possibility that a branch of the axillary nerve could be severed and should that occur, sensation in the area of the surgery would be permanently lost. There is also a possibility that movement of the defendant’s arm may be permanently restricted as full use of the muscle incised may not return. The surgery will entail stitches, a permanent scar and the need for postoperative pain-killers. Such a procedure involves risk, trauma and pain.
Dr. Fortune testified that the surgery, which he character *757 ized as "minor”, could be performed on an out-patient basis, under local anesthesia. He also stated there is no medical reason whatsoever to remove the bullet fragments.
The People contend that removal of the bullet fragments presents no major risk to the defendant’s health and safety and the intrusion by surgery is minor in nature.
The defendant will not voluntarily undergo the surgical procedure. He contends that the proposed surgery violates his right to be secure in his person and constitutes an unreasonable search under the Fourth Amendment.
The court makes the following conclusions by law based upon the Fourth Amendment to the US Constitution and the United States Supreme Court’s decision in Winston v Lee (470 US 753 [1985]), on which both the People and defendant rely.
The Fourth Amendment states, "The right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated”.
As the Supreme Court stated in Winston v Lee (supra, at 760, quoting Schmerber v California, 384 US 757, 767), " '[t]he overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State.’ ”
The court in Winston (supra, at 760) while holding that "[t]he reasonableness of surgical intrusions beneath the skin depends on a case-by-case approach”, also noted that "[a] compelled surgical intrusion into an individual’s body for evidence, however, implicates expectations of privacy and security of such magnitude that the intrusion may be 'unreasonable’ even if likely to produce evidence of a crime” (supra, at 759).
Applying the balancing test formulated in the earlier case of Schmerber v California (384 US 757 [1966], supra), the court considered a number of factors in determining the reasonableness of a compelled surgical intrusion, among them the threat to "the safety or health of the individual”, "the extent of [the] intrusion upon the individual’s dignitary interests in personal privacy and bodily integrity” and "the community’s interest in fairly and accurately determining guilt or innocence” (Winston v Lee, supra, at 761, 762).
As in Winston (supra), this court’s inquiry must focus on the medical risk to the defendant, the extent of intrusion upon his privacy interests and on the State’s need for the evidence.
While Dr. Fortune’s testimony at the hearing spoke to *758 the relative safety and lack of threat to life of the proposed surgery, the risk, trauma and pain involved in a procedure requiring an incision 3 to 4 inches in length and 2 inches in depth while not life threatening are certainly to be considered.
A letter from the doctor to the defense attorney regarding the procedure and submitted to this court in support of the People’s motion mentions the "potential of nerve damage when the bullets are removed.” At the evidentiary hearing, he also conceded that the possibility of permanent nerve damage existed.
While Dr. Fortune categorized the surgery as "minor”, "[t]he question whether the surgery is to be characterized in medical terms as 'major’ or 'minor’ is not controlling.” (Winston v Lee, supra, at 764, n 8.) Nor can the proposed procedure be likened to the removal of a .32 caliber slug which lay "superficially beneath the skin” and "was extracted by gentle squeezing after an incision an inch long had been made” as in the case of United States v Crowder (543 F2d 312, 314, 316 [1976]) on which the People also rely.
Even granting the relative safety of the procedure, the affront to bodily integrity remains. The extent of the incision and the probing required to remove the bullet fragments constitute a substantial intrusion upon the privacy interests and bodily integrity of the defendant. Though the court in Winston v Lee (supra) found the compelled surgery which was to be performed under general anesthesia highly intrusive, it failed to distinguish surgery under general anesthesia from surgery under local anesthesia. This court cannot distinguish a difference in control or intrusiveness when surgery is compelled under either local or general anesthesia. Both entail divestment of defendant’s control and surgical probing within the body; a degree of intrusion far beyond the "commonplace” prick of a needle contemplated in Schmerber v California (supra). (See, Note, Bodily Intrusion in Search of Evidence: A Study in Fourth Amendment Decisionmaking, 62 Ind LJ 1181, 1198 [1987].)
Turning to whether the People have demonstrated a compelling need for the evidence, this court finds this other scale of the Schmerber balancing test the most troublesome.
The facts and documents put forth by the People in their moving papers to establish probable cause for the surgical procedure diminish the need for the evidence the surgery would produce.
*759 The People contend that the bullet fragments once removed could be compared ballistically with bullets fired from the weapon of the deceased and "provide highly probative evidence of the defendant’s participation in the crime.”
As no evidence was presented at the evidentiary hearing demonstrating a "compelling need” for the evidence sought as required by Winston v Lee (470 US 753, supra), this court is forced to rely on the People’s moving papers. These papers contain only conclusory statements and are devoid of any ballistic evidence to support the probativeness and usefulness for comparison purposes of the bullet fragments themselves.
While there is no doubt that the evidence sought is relevant, it is the necessity of that evidence that must be shown. The People have failed to show whether the bullet fragments would or could be "essential * * * to a fair determination of the charges pending against the defendant.” (2 LaFave, Search and Seizure § 4.1 [d], at 137 [2d ed 1987].)
Another factor to be considered in assessing the requisite "compelling need” is the availability of additional evidence. Though the evidence available to the People does not include a spontaneous identification by the victim as in Winston (supra), it is still substantial.
An accomplice’s testimony places defendant at the scene. He states that shots were fired, that he observed the defendant’s wound and that the defendant stated the victim was dead. The defendant himself referred to his injury as a "gunshot wound” from a ".357 magnum”. A .357 magnum belonging to the deceased and later alleged by the People to be the murder weapon was found in defendant’s possession. Medical records and testimony are available concerning the probable cause of defendant’s injury. The availability of this alternative evidence also restricts the People’s need to compel the defendant to undergo surgery.
In conclusion, the court again turns to the language of Winston v Lee (supra, at 767), "when the State seeks to intrude upon an area in which our society recognizes a significantly heightened privacy interest, a more substantial justification is required to make the search 'reasonable.’ ”
Before the State may surgically search the body of a presumed innocent man, it must show by substantial evidence that the method is safe, with limited risk, will produce relevant evidence which is probative of a material fact, which can *760 be obtained in no other way, and there is not other substantial alternative evidence. This the People failed to do.
The People have failed to make the strong affirmative case necessary to demonstrate a "compelling need” for the evidence sought, and in failing to meet that burden, have tipped the scale in favor of the defendant.
Thus, the People’s motion for an order, pursuant to CPL 240.40, for removal of the bullet fragments from defendant’s left shoulder is denied.
The People also move this court for an order directing the defendant to permit the taking of blood from his body. For the reasons as hereinafter stated, the People’s motion is granted.
The Court of Appeals has held that a court may issue an order directing the defendant to permit the taking of blood if "the People establish (1) probable cause to believe the suspect has committed the crime, (2) a 'clear indication’ that relevant material evidence will be found, and (3) the method used to secure it is safe and reliable.” (Matter of Abe A., 56 NY2d 288, 291.)
In Matter of Abe A. (supra) the Court of Appeals held that the removal of blood from a suspect in a homicide investigation by preindictment order was reasonable. In the instant case, the People have ample probable cause as evidenced by the indictment.
Further, there is a clear indication that relevant evidence will be found from the blood sample taken by comparing the sample taken from the defendant with the blood found at the scene and that of the deceased.
Additionally, the method used to secure the blood sample is simple, safe and reliable. The defendant will not be at risk.
In weighing the seriousness of the crimes and the importance of the evidence to the investigation and the degree of the intrusion involved against the defendant’s constitutional right to be free from unreasonable search and seizure, the court finds that the scale tips in favor of permitting the taking of a blood sample from the defendant.
Thus, this court holds that the People have carried their burden as set forth in Matter of Abe A. (supra). As such, the People’s motion is granted in this respect.